JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-1591 JGB (SHKx)** | Date | January 18, 2024 |
|---|---|---|---|
| Title | *Nicole Martinez Larez v. Avenue5 Residential LLC, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING IN PART Defendant's Motion to Compel Arbitration (Dkt. No. 16); (2) VACATING the January 22, 2024 Hearing; and, (3) STAYING the Action Pending Completion of Arbitration (IN CHAMBERS)

Before the Court is Defendant Avenue5 Residential LLC's motion to compel arbitration. ("Motion," Dkt. No. 13.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS IN PART** the Motion and **VACATES** the January 22, 2024 hearing. The Court also **STAYS** the action pending completion of arbitration.

## I. BACKGROUND

On December 12, 2022, Plaintiff Nicole Martinez Larez filed a class action complaint against Defendants Avenue5 Residential, LLC and Does 1 through 20, inclusive, in the Superior Court of California for the County of San Bernardino. ("FAC," Dkt. No. 1-2.) Defendant removed the action on August 8, 2023. ("Notice of Removal," Dkt. No. 1.) The First Amended Complaint asserts nine causes of action: (1) violation of California Labor Code §§ 1194, 1194.2, and 1197, and violation of IWC Wage Order § 3-4 for failure to pay minimum wages; (2) violation of California Labor Code §§ 510, 1194, and 1198, and violation of IWC Wage Order § 3 for failure to pay overtime; (3) violation of California Labor Code §§ 226.7 and 512, and violation of IWC Wage Order § 11 for missed meal periods; (4) violation of California Labor Code § 226.7 and IWC Wage Order § 12 for missed rest periods; (5) violation of California Labor Code § 226 and IWC Wage Order for failure to provide accurate itemized wage statements; (6) violation of

California Labor Code §§ 204, 210 for failure to pay timely during employment; (7) violation of California Labor Code §§ 201, 202, and 203 for failure to pay all wages due upon separation of employment; (8) violation of Business & Professions Code § 17200, et seq. for unfair and unlawful business practices; and, (9) enforcement of Labor Code § 2698 et seq. ("PAGA"). (See id.)

On October 16, 2023, Defendant filed the instant Motion. (Motion.) In support of the Motion, Defendant filed:

- Declaration of Betsy Fillmore, Vice President of Human Resources ("Fillmore Decl.," Dkt. No. 15) with attached exhibits ("Fillmore Exs. A–C," Dkt. Nos. 15-A–15-C);
- Declaration of attorney Gal Gressel ("Gressel Decl.," Dkt. No. 16) with attached exhibit ("Gressel Ex. A," Dkt. No. 16-A); and,
- Request for Judicial Notice ("RJN," Dkt. No. 17) with attached exhibits ("RJN Exs. A – C," Dkt. No. 17-A–17-C).

Defendant's RJN requests that the Court take notice of the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures ("AAA Rules") and Employment/Workplace Fee Schedule, both of which are available on the American Arbitration Association website. (RJN.) The RJN also requests that the Court take notice of the Central District's Schedule of Court Fees.[1] (RJN.)

On October 23, 2023, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 19.) Defendant replied on October 30, 2023. ("Reply," Dkt. No. 20.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate."). Its principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 334 (citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468 (1989) (internal quotation marks omitted)). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." Id. at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in

---

[1] Because the Court does not rely on the AAA Rules nor the Central District's Schedule of Fees in deciding this Motion, the RJN is **DENIED AS MOOT**.

[the arbitration] agreement." 9 U.S.C. § 4.  Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id.  If such a showing is made, the district court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate.  Id. § 3.  On a motion to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Cox, 533 F.3d at 1119 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  A party seeking to compel arbitration under the FAA bears the burden of making this showing.  Id.

### III.  DISCUSSION

Defendant is a property management company that provides services to property owners, including general management, maintenance, construction management, resident screening, insurance, and market analysis.  (Motion at 9.)  On December 22, 2021, Defendant hired Plaintiff to work as an assistant property manager at a property located in Corona Pointe, California, that was managed by Defendant.  (Id.)  As part of her onboarding, Plaintiff (like other employees) received a copy of the "Mutual Agreement to Arbitrate Claims" document ("Arbitration Agreement") along with additional onboarding paperwork.  (Id. at 11.)  Defendant seeks to compel arbitration of Plaintiff's FAC in accordance with the Arbitration Agreement.  (Motion.)

Plaintiff does not dispute that she signed the Arbitration Agreement, nor does she argue that the agreement is broadly invalid or unenforceable.  (See Opposition.)  Plaintiff's Opposition also fails to respond to Defendant's contention that the Arbitration Agreement requires that her class action claims be dismissed.  (Id.; Reply at 5.)  These points are thus deemed conceded for failure to oppose.  See Virgin Scent, Inc. v. BT Supplies W., Inc., 615 F. Supp. 3d 1118, 1136 (C.D. Cal. 2022).  As such, the only issue under consideration by the Court is whether Plaintiff's PAGA claim must be compelled to arbitration.  (See Opposition.)

Defendant moves to compel arbitration of Plaintiff's individual PAGA claim and to dismiss her other representative PAGA claim.  (Motion.)  Plaintiff asserts that she cannot be compelled to arbitrate her PAGA claim on the following grounds: (1) by its terms, the Arbitration Agreement does not apply to PAGA claims because it contains a provision which explicitly excludes such claims from arbitration; (2) the Arbitration Agreement contains an unenforceable waiver of representative PAGA claims; and, (3) even if her individual PAGA claim is compelled to arbitration, Plaintiff's representative PAGA claims brought on behalf of other purportedly aggrieved employees may proceed in court.  (Opposition.)

**A. Relevant Contractual Provisions**

The Arbitration Agreement contains the following contractual provisions relevant to the resolution of this dispute.

1. <u>Arbitration</u>. The Parties agree that all disputes, claims or controversies arising out of, or in any way related to, your employment with the Company — including but not limited to your application for employment, the employment relationship, or the termination of that relationship (collectively, "Covered Disputes") — must be resolved exclusively by final and binding arbitration between the Parties, and **not by way of court or jury trial**. Subject to the limited exceptions identified below, this mutual Agreement covers any Claims that the Company may have against you, or that you may have against the Company . . .

2. <u>Claims Subject to Arbitration</u>. Except as otherwise provided in this Agreement, Covered Disputes subject to arbitration include, but are not limited to, all past, present and future claims for: . . . minimum wage, overtime, off-the-clock, back or front wages, bonuses/commissions, meal and rest periods, wage statements, expense reimbursements, or other wage and hour violations . . .

3. <u>Claims Excluded from Arbitration</u>. You have rights that are unaffected by this Agreement, and Section 2 does not cover the following, unless agreed to otherwise: . . . (e) claims under the California Private Attorneys General Act, as applicable, to the extent they are not lawfully subject to private arbitration . . .

. . .

8. <u>No Collective or Class Actions</u>. Notwithstanding any of the foregoing, or any other provision in this Agreement, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR COLLECTIVE ACTION, and the Parties waive their right to participate in any class and/or collective action. . . .

9. <u>No Representative Actions</u>. Except to the extent this provision is unenforceable under applicable law, THE PARTIES AGREE THAT EACH MAY FILE CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES, AND MAY NOT FILE CLAIMS AS A REPRESENTATIVE PLAINTIFF AND/OR PARTICIPATE IN ANY REPRESENTATIVE ACTION AGAINST THE OTHER. The arbitrator will have no authority to hear or preside over disputes on a representative basis. The Parties agree that any representative claims that are found not subject to this Agreement to arbitrate must be resolved in court and are stayed pending the outcome of the arbitration of any other claims. . . .

(Ex. A at 1–4 (emphasis in original).)

//
//

## B. Analysis

The California legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." Arias v. Superior Court, 46 Cal. 4th 969, 980 (2009). "Under this legislation, an aggrieved employee may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." Id. "Although the statute's language suggests that an 'aggrieved employee' sues 'on behalf of himself or herself and other current or former employees,' California precedent holds that a PAGA suit is a 'representative action in which the employee plaintiff sues as an agent or proxy' of the State." Viking River Cruises, Inc. v. Moriana, 596 U.S. 639 (2022) (quoting Cal. Lab. Code § 2699(a); Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348 (2014)).

PAGA claims are representative in two distinct senses. First, all PAGA claims an aggrieved employee brings are asserted on behalf of the state, and thus all PAGA claims are representative in this sense. Viking River, 596 U.S. at 648–49; see also Zakaryan v. The Men's Wearhouse, Inc., 33 Cal. App. 5th 659, 672 (2019) ("[A]n individual employee bringing a PAGA claim is vindicating one and only one particular injury—namely, the injury to the public that the state labor law enforcement agencies were created to safeguard.") (internal quotations omitted). Second, aggrieved employees may assert claims based not only on Labor Code violations they personally suffered, but also based on violations "other current or former employees" suffered. Id.

In Iskanian, the California Supreme Court held that an employer cannot require an employee to agree to a pre-dispute waiver of the right to bring a PAGA claim in any forum. Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348, 383, abrogated in part by Viking River Cruises, Inc. v. Moriana, 596 U.S. 639 (2022). In reaching this conclusion, the California Supreme Court reasoned that "an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code," and thus such agreements are "against public policy and may not be enforced." Iskanian, 59 Cal. 4th at 383. Iskanian thus teaches that employers cannot enforce agreements which would waive an employee's right to bring a representative PAGA claim, with "representative" here referring to an aggrieved employee's right to bring an action on behalf of the state. In Viking River Cruises, the United States Supreme Court referred to this holding as Iskanian's "principal rule." Viking River Cruises, 596 U.S. at 649.

Iskanian also held that agreements to arbitrate or litigate an employee's individual PAGA claims (that is, claims for Labor Code violations that an employee personally suffered) separately from an employee's non-individual PAGA claims (that is, claims for Labor Code violations suffered by other employees) are invalid. Iskanian, 59 Cal. 4th at 383. The United States Supreme Court referred to this as Iskanian's "secondary rule." Viking River Cruises, 596 U.S. at 649. This holding implicated the second meaning of representative in the PAGA context: the

representative nature of PAGA claims brought by an aggrieved employee on behalf of other employees for violations the aggrieved employee did not suffer.

In Viking River Cruises, the United States Supreme Court concluded that Iskanian's secondary rule was preempted by the FAA "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." Id. at 662. The Court reasoned that Iskanian's holding violated the FAA because it prohibited parties from contracting around the PAGA joinder device which allows many employees' claims to be brought in one representative proceeding. See id. at 659–63. The Court upheld Iskanian's principal rule, finding that the FAA did not preempt Iskanian's ban on waivers of an employee's ability to serve as a proxy of the state in PAGA actions. Id. at 659–61. "Accordingly, under Viking River Cruises, employees may waive the right to bring PAGA claims that are specifically premised on [Labor Code] violations they have personally suffered, but waivers of the right to assert . . . claims [on the state's behalf] under PAGA remain invalid." Harper v. Charter Commc'ns, LLC, 626 F. Supp. 3d 1148, 1151 (E.D. Cal. 2022), aff'd, 2023 WL 6442588 (9th Cir. Oct. 3, 2023) (internal quotations omitted). The Court analyzes the Arbitration Agreement against this backdrop.

### 1. Plaintiff's Individual PAGA Claim

Plaintiff urges in the first instance that the plain language of the Arbitration Agreement does not encompass Plaintiff's PAGA claim because it requires that any representative claim proceed in court. (Opposition at 4–5.) In support of this argument, Plaintiff points to Section 3 of the Agreement, titled "Claims Excluded from Arbitration," which includes "claims under the California Private Attorneys General Act, as applicable, to the extent they are not lawfully subject to private arbitration." (Ex. A at 1 –2.) Plaintiff also contends that her PAGA claim need not be arbitrated because the Agreement precludes the arbitrator from presiding over "any form of representative . . . proceeding," and contains the following language specific to the arbitrator's authority to preside over representative actions: "The Parties agree that any representative claims that are found not subject to this Agreement to arbitrate must be resolved in court and are stayed pending the outcome of the arbitration of any other claims." (Id. at 4.)

Defendant responds that the first provision on which Plaintiff relies expressly limits the exclusion, which only applies to PAGA claims "*to the extent they are not lawfully subject to private arbitration.*" (Reply at 6 (citing Ex. A).) Section 9 of the Agreement further states that "*except to the extent this provision is unenforceable under applicable law,* the parties agree each may file claims against the other only in their individual capacities, and may not file claims as a representative plaintiff and/or participate in any representative action against the other." (Id. (citing Ex. A at 4).) The Agreement also provides that "[t]he Parties agree that any representative claims that are found not subject to this Agreement to arbitrate must be resolved in court and are stayed pending the outcome of the arbitration of any other claims." (Id. (citing Ex. A at 4).) According to Defendant, these provisions require that Plaintiff's individual PAGA claim be subject to arbitration pursuant to Viking River Cruises. Plaintiff argues that Viking River Cruises is inapplicable because (1) the agreement at issue in that case is "markedly different" from the

Arbitration Agreement at issue here, and (2) Viking River Cruises was decided after the Agreement was executed and cannot be applied retroactively. (Opposition at 4–7.)

Plaintiff's argument misinterprets the Agreement and misstates the effect of Viking River Cruises. First, Plaintiff is incorrect that Viking River Cruises does not apply retroactively. As a general matter, judicial decisions are retroactive, and Viking River Cruises is no exception. See Harper v. Virginia Dep. of Taxation, 509 U.S. 86, 97 (1993). Indeed, that is why in Viking River Cruises, the Court could (and did) compel plaintiff's individual PAGA claim to arbitration even though the agreement was executed when Iskanian was good law. See Viking River Cruises, 596 U.S. at 662. Second, contrary to Plaintiff's characterization, the Arbitration Agreement is similar to the Viking River Cruises agreement, and Viking River Cruises's reasoning therefore squarely applies and requires a similar result.

The determinative question concerning Viking River Cruises's applicability is whether the Arbitration Agreement provides for the division of Plaintiff's individual and non-individual PAGA claims such that her individual PAGA claim may be compelled to arbitration in accordance with the Agreement. See Harper, 626 F. Supp. 3d at 1151. The Viking River Cruises arbitration agreement "contained a 'Class Action Waiver" providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action." 596 U.S. at 647. That agreement "also contained a severability clause which stated that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.'" Id. The Arbitration Agreement contains a similar provision waiving Plaintiff's right to any representative action, which the parties do not dispute includes PAGA actions. (See Ex. A; Motion; Opposition.) As previously noted, the Agreement also contains a severability clause which states that "the Parties agree that any representative claims that are found not subject to this Agreement to Arbitrate must be resolved in court and are stayed pending the outcome of the arbitration of any other claims." (Ex. A at 4.) The Agreement also excludes PAGA claims from arbitration "to the extent they are not lawfully subject to private arbitration." (Id.)

Just as in Viking River Cruises, the Arbitration Agreement is ambiguous as to the meaning of waiving the right to "representative actions." Although this provision would be "invalid if construed as a wholesale waiver of PAGA claims," the Agreement includes language which makes clear that "any portion of the waiver that remains valid must still be enforced in arbitration." See Viking River Cruises, 596 U.S. at 662. This Court therefore interprets the Agreement as requiring that Plaintiff arbitrate her individual PAGA claim, just as the Supreme Court did in Viking River Cruises.

### 2. Plaintiff's Non-individual PAGA Claims

The Court now considers whether and how Plaintiff's non-individual claims will proceed, as those claims have not been compelled to arbitration. Plaintiff urges that she must be permitted to proceed with her non-individual PAGA claims in court pursuant to the California Supreme

Court's recent decision in Adolph v. Uber Technologies, Inc., 15 Cal. 5th 1104 (2023). (Opposition at 7–9.) Defendant contends that Viking River Cruises requires dismissing Plaintiff's non-individual claims for lack of statutory standing, and because Viking River Cruises and the FAA conflict with Adolph, Adolph should not be followed. (Reply at 11–12.)

In Viking River Cruises, the Supreme Court dismissed the plaintiff's non-individual claims for lack of statutory standing pursuant to PAGA. Id. at 663. The Court offered the following explanation for its decision:

> The remaining question is what the lower courts should have done with [Plaintiff's] non-individual claims. Under our holding in this case, those claims may not be dismissed simply because they are "representative." Iskanian's rule remains valid to that extent. But as we see it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. See Cal. Lab. Code Ann. §§ 2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. See [Kim v. Reins Int'l Calif., Inc., 9 Cal. 5th 73, 89 (2020)] ("PAGA's standing requirement was meant to be a departure from the 'general public' ... standing originally allowed" under other California statutes). As a result, [Plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims.

Id. at 662–63. The Court's decision to dismiss the plaintiff's non-individual claims seems to flow from its interpretation of PAGA, a California statute, and not—as Defendant contends—its consideration of the FAA or any other federal law. This is further evidenced by the Court's citation to a California Supreme Court case interpreting PAGA's standing requirement. Moreover, in her Concurrence, Justice Sotomayor offered the following interpretation of the Court's reasoning on the statutory standing issue:

> [T]he Court reasons, based on available guidance from California courts, that [plaintiff] lacks "statutory standing" under PAGA to litigate her "non-individual" claims separately in state court. Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word. Alternatively, if this Court's understanding is right, the California Legislature is free to modify the scope of statutory standing under PAGA within state and federal constitutional limits.

Id. at 664 (Sotomayor, J., concurring).

The Court therefore rejects Defendant's contention that Adolph is inapplicable. "[T]he Supreme Court of California is the final arbiter of California law." Merhi v. Lowe's Home Ctr., LLC, 2023 WL 6798500, at *8 (S.D. Cal. Oct. 13, 2023). Adolph considered and squarely rejected the Supreme Court's conception of PAGA standing, holding instead that "where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in court." Adolph v. Uber Techs., Inc., 14 Cal. 5th 1104, 1123 (2023). Adolph's holding does not contravene or conflict with Viking River Cruises in an impermissible manner. "[N]othing in Viking River suggests that the requirement of arbitration in a separate proceeding requires severance of claims, or dismissal of the PAGA Plaintiffs' non-individual claims. Viking River explicitly noted that non-individual claims "may not be dismissed simply because they are 'representative.'" Merhi, 2023 WL 6798500, at *7 (quoting Viking River Cruises, 596 U.S. at 662–63). The Court will not dismiss Plaintiff's non-individual PAGA claims.[2]

However, Plaintiff's non-individual PAGA claims will be stayed pending completion of arbitration. Adolph contemplates this result. See Adolph, 14 Cal. 5th at 1123 ("[T]he trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration."). Should Plaintiff fail to prove liability on her underlying individual PAGA claims, she will not be an "aggrieved party" pursuant to PAGA and will not have standing to pursue her non-individual PAGA claims. See id. at 1124 ("If the arbitrator determines that [plaintiff] is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and [plaintiff] could no longer prosecute his non-individual claims due to lack of standing.").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's Motion to Compel Arbitration and **VACATES** the January 22, 2024 hearing. In the interest of preventing relitigation of Plaintiff's status as an aggrieved employee, the Court **STAYS** this action pending the outcome of individual arbitration proceedings. The Clerk is directed to administratively close this case.

**IT IS SO ORDERED.**

---

[2] The Court acknowledges that it reached a different conclusion in Rivas v. Coverall N. Am., Inc., 2022 WL 17960776 (C.D. Cal. Nov. 28, 2022). That decision pre-dates Adolph.